[Cite as *State v. Sherman*, 2013-Ohio-2136.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney |
| -vs- | : | |
| | : | |
| PATRICK R. SHERMAN | : | Case No. 12CA14 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:              Appeal from the Court of Common
                                     Pleas, Case No. 2009-CR-0028


JUDGMENT:                            Affirmed


DATE OF JUDGMENT:                    May 24, 2013


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN C. NIEFT                         JEFFREY P. UHRICH
38 South Park Street                  P.O. Box 1977
Mansfield, OH  44902                  Westerville, OH  43086

*Farmer, J.*

{¶1}   On January 7, 2009, the Richland County Grand Jury indicted appellant, Patrick Sherman, on one count of having weapons under disability with a firearm specification in violation of R.C. 2923.13, one count of carrying a concealed weapon in violation of R.C. 2923.12, one count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16, two counts of trafficking in drugs with forfeiture specifications in violation of R.C. 2925.03, and two counts of possession of drugs (crack cocaine and cocaine) with forfeiture specifications in violation of R.C. 2925.11.   Said charges arose after a traffic stop by Mansfield Police Officer Phil Messer, Jr.

{¶2}   On May 29, 2009, appellant filed a motion to suppress, claiming an illegal stop.  A hearing was held on July 29, 2009.  By judgment entry filed July 31, 2009, the trial court denied the motion.

{¶3}   On September 28, 2009, appellant pled guilty to having weapons under disability with a firearm specification and possession of crack cocaine with a forfeiture specification.   The remaining counts were dismissed.   By sentencing entry filed September 29, 2009, the trial court sentenced appellant to an aggregate term of eight years in prison.

{¶4}   Appellant appealed his sentence, claiming his plea was not made knowingly and voluntarily.   This court agreed and reversed the matter for further proceedings.  *State v. Sherman,* 5th Dist. No. 2009-CA-132, 2010-Ohio-3959.

{¶5}   On January 7, 2011, appellant filed a motion to discharge the case, claiming a violation of his speedy trial rights.   A hearing was held prior to trial on January 10, 2011.  The trial court denied the motion.  The trial commenced and the jury

found appellant guilty of all counts save for the two counts of drug trafficking. By sentencing entry filed January 21, 2011, the trial court sentenced appellant to an aggregate term of eight years in prison. The two outstanding counts were dismissed on February 13, 2012.

{¶6} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶7} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S REQUEST TO DISCHARGE THE CASE AS HIS RIGHT TO SPEEDY TRIAL WAS VIOLATED PURSUANT TO R.C. 2945.71 AND R.C. 2945.73."

II

{¶8} "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BASED UPON THE ILLEGAL SEARCH OF DEFENDANT-APPELLANT'S PERSON AND PROPERTY BY LAW ENFORCEMENT AS WELL AS THE ILLEGAL SEIZURE OF EVIDENCE FROM DEFENDANT-APPELLANT BY LAW ENFORCEMENT."

III

{¶9} "THE TRIAL COURT ERRED BY IMPOSING FINES AS PART OF THE DEFENDANT-APPELLANT'S SENTENCE WITHOUT CONSIDERING THE DEFENDANT-APPELLANT'S PRESENT AND FUTURE ABILITY TO PAY THE FINES."

I

{¶10} Appellant claims the trial court erred in denying his motion to discharge the case as the 144 days between this court's reversal and his trial were unreasonable and violated his rights to a speedy trial. We disagree.

{¶11} A timeline of events is in order: this court's reversal occurred on August 19, 2010, a pretrial was set for September 29, 2010 which was subsequently rescheduled, new trial counsel was appointed on October 27, 2010, the state filed discovery on October 28, 2010 and appellant was required to reciprocate, a pretrial was held on November 24, 2010, appellant requested a bond hearing on December 6, 2010, appellant filed a pro se request for new trial counsel on December 10, 2010, a magistrate recommended a $50,000 cash and personal recognizance bond as well as electronic monitoring on January 4, 2011, appellant filed a pro se motion to discharge the case on January 4, 2011, appellant responded to the state's discovery on January 6, 2011, appellant's trial counsel filed a motion to discharge the case on January 7, 2011, appellant filed a motion to recuse the judge on January 7, 2011, and the jury trial commenced on January 10, 2011. Because appellant was incarcerated, the docket includes numerous warrants to convey.

{¶12} R.C. 2945.71 governs time within which hearing or trial must be held. In addressing a misdemeanor conviction and a no contest plea in *State v. Hull*, 110 Ohio St.3d 183, 2006-Ohio-4252, paragraph one of the syllabus, the Supreme Court of Ohio reaffirmed its previous position that "R.C. 2945.71 does not apply to criminal convictions that have been overturned on appeal." The *Hull* court at ¶ 20 explained the following:

In situations where the legislature has not expressed its intent for R.C. 2945.71 to apply, the time limitation for bringing the appellant to trial is governed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In *Barker v. Wingo* (1972), 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101, the court determined this to be "a reasonable period consistent with constitutional standards."

{¶13} In upholding a 149 day delay, the *Hull* court at ¶ 22-23 stated the following:

In *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the court identified four factors to be assessed in determining whether an accused had been constitutionally denied a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. Id. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. Even though no single factor controlled, the court in *Barker* stated that the length of the delay is particularly important:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay *which is presumptively prejudicial,* there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent

upon the peculiar circumstances of the case." (Emphasis added and footnote omitted.) Id. at 530–531, 92 S.Ct. 2182, 33 L.Ed.2d 101.

{¶14} From our review of the docket, we find the time from reversal to retrial (144 days) was reasonable. Appellant requested new trial counsel, was required to reciprocate to the state's discovery filing, and requested a bond hearing.

{¶15} Assignment of Error I is denied.

II

{¶16} Appellant claims the trial court erred in denying his motion to suppress as the evidence obtained during the traffic stop was against the guarantees of the Fourth Amendment to the United States Constitution. We disagree.

{¶17} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist. 1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist. 1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist. 1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing

this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist. 1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist. 1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶18} In *Terry v. Ohio,* 392 U.S. 1, 22 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman,* 64 Ohio St.2d 291 (1980), paragraph one of the syllabus.

{¶19} Appellant's specific challenge is that the trial court's findings of fact are against the manifest weight of the evidence. Appellant argues Officer Messer's observations relative to his speed and illegal left turn were not the reasons why he was stopped.

{¶20} As the Supreme Court of Ohio recognized in *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, a review of a trial court's findings of fact is limited:

"Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, [20], 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

{¶21} In its judgment entry filed July 31, 2009, the trial court made the following decision on the facts:

A trained experienced police officer working at 2:00 a.m. in a high crime area is capable of making observations and decisions that an untrained person would be incapable of. When at 2:00 a.m. such an officer observes an unknown vehicle make an unannounced turn and speed down an unknown alley, that officer has a reason to stop the vehicle and check out the condition of the driver. Reasonable conclusions

the officer could have made were that he was dealing with an impaired driver or that the driver of the vehicle had some other untoward reason for getting quickly away from the police. There was no evidence in this case that Officer Messer had any idea who was driving the vehicle until the vehicle came to a stop.

There is simply no indication that Officer Messer did anything improper. While all citizens have constitutional rights, defendant – a known criminal with a gun and drugs in his possession – acted in such a way as to bring himself to the attention of the officer. The officer had a right and a duty to check out why defendant was driving erratically and he cited defendant for his failure to operate his vehicle in accordance to Ohio law.

{¶22} The trial court specifically found Officer Messer to be credible in his testimony: "[u]nder the circumstances of this case, this Court has no reason to question the integrity of the Mansfield police officer who – by his training and experience – was able to legitimately take a gun out of the hands of a person previously convicted of a felony of violence."

{¶23} Appellant argues the stop was pretextural and Officer Messer knew who he was prior to the stop. In our review of the record, we find appellant's position not to be substantiated by the evidence.

{¶24} Officer Messer testified he first observed the vehicle driving at a high rate of speed down an alley at 2:00 a.m. July 29, 2009 T. at 5, 21. He attempted to catch

up to the vehicle. *Id.* at 5. The vehicle turned left from the alley without signaling. *Id.* Officer Messer activated his patrol lights and the vehicle u-turned into a driveway and stopped. *Id.* at 6, 12, 19-20, 22-23. As Officer Messer called in the stop, he observed the driver of the vehicle "making a lot of movements, which is unusual for a stop." *Id.* at 6. Officer Messer approached the vehicle from the passenger side, observed two people in the front seat, and asked them for identification. *Id.* at 7. The driver of the vehicle appeared to be stalling and did not hand his identification over immediately. *Id.* Backup officers arrived and asked the driver to exit the vehicle. *Id.* at 8. As the driver turned, Officer Messer observed a silver handgun "up under his right leg." *Id.* The driver was identified as appellant. *Id.* at 10. The videotape from the patrol car was marked as State's Exhibit No. 4 and was reviewed by the trial court. *Id.* at 11, 24-25.

{¶25} Upon review, we find the stop met the requirements of *Terry,* and the trial court did not err in denying appellant's motion to suppress.

{¶26} Assignment of Error II is denied.

III

{¶27} Appellant claims the trial court erred in imposing fines as the trial court failed to consider his present and future ability to pay. We disagree.

{¶28} R.C. 2929.19(B)(5) states, "[b]efore imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." In *State v. Martin,* 140 Ohio App.3d 326, 327, 2000-Ohio-1942 (4th Dist.), our brethren from the Fourth District noted, "there are no express factors that must be taken into consideration or findings regarding the offender's ability

to pay that must be made on the record." All that is required is for the trial court to consider the offender's present or future ability to pay.

{¶29} Appellee argues the trial court was very familiar with appellant's ability to pay. During the first sentencing hearing, the trial court heard appellant's mother wherein she stated "most of my son's life I've been taking care of him." September 28, 2009 T. at 19. The trial court was aware of appellant's high school education, that he could read and write, his age, and the fact that he had multiple appearances before the court. *Id.* at 6-7.

{¶30} In its sentencing entry filed January 21, 2011, the trial court ordered appellant to pay a total fine of $7,000.00: $5,000.00 on the having weapons under disability conviction, $1,000.00 on the possession of crack cocaine conviction, and $1,000.00 on the possession of cocaine conviction. The possession of crack cocaine conviction was a felony in the second degree and carried with it a mandatory fine up to $7,500.00. R.C. 2925.11(E)(1) and 2929.18(A)(3)(b).

{¶31} R.C. 2929.18(B)(1) provides for the waiver of the mandatory fine if: 1) the offender files an affidavit of indigency prior to sentencing alleging he/she is unable to pay the mandatory fine, and 2) the trial court makes a finding that the offender is an indigent person and unable to pay the mandatory fine. Appellant did not file an affidavit of indigency prior to sentencing. Although appellant filed an affidavit of indigency for the appointment of counsel back on November 10, 2009, such affidavit does not apply to mandatory fines. *State v. Gordon,* 5th Dist. No. CT2007-0011, 2007-Ohio-5545. "[T]he ability to pay a fine over a period of time is not equivalent to the ability to pay legal

counsel a retainer fee at the onset of criminal proceedings." *State v. Kelly,* 145 Ohio App.3d 277, 284 (12th Dist.2001).

{¶32} Based upon the foregoing, we find the trial court did not err in imposing the complained of fines.

{¶33} Assignment of Error III is denied.

{¶34} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.


s/ Sheila G. Farmer_____


s/ W. Scott Gwin_____


s/ Patricia A. Delaney_____

JUDGES


SGF/sg 503

[Cite as *State v. Sherman*, 2013-Ohio-2136.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| PATRICK R. SHERMAN | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 12CA14 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed. Costs to appellant.


s/ Sheila G. Farmer_____


s/ W. Scott Gwin_____


s/ Patricia A. Delaney_____

JUDGES